# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | |
| ) | |
| AMC INVESTORS, LLC, ) | Case No. 08-12264 (CSS) |
| ) | |
|     Alleged Debtor. ) | Re: Docket Nos. 1, 12, 15 & 16 |
| ) | |
| ) | |
| In re: ) | |
| ) | |
| AMC INVESTORS II, LLC, ) | Case No. 08-12265 (CSS) |
| ) | |
|     Alleged Debtor. ) | Re: Docket Nos. 1, 10, 13 & 14 |
| ) | |

## OPINION

Joseph Grey
Stevens & Lee, P.C.
1105 North Market Street
7th Floor
Wilmington, Delaware 19801
    -and-
Chester Salomon
Constantine Pourakis
Stevens & Lee, P.C.
485 Madison Avenue
20th Floor
New York, New York 10022

Counsel for Alleged Debtors,
AMC Investors, LLC, and
AMC Investors II, LLC

Mark Collins
Marcos Ramos
Cory Kandestin
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801

Counsel for Petitioning Creditor,
Eugenia VI Venture
Holdings, Ltd.

Dated: June 5, 2009

Sontchi, J. _____

## INTRODUCTION

The commencement of an involuntary bankruptcy case is governed by section 303 of the Bankruptcy Code. Under section 303(b), the holder of a claim subject to a "bona fide dispute" is not eligible to file an involuntary petition for relief.

The sole petitioning creditor in this case is the holder of a judgment against the alleged debtors. Although the judgment is under appeal, it has not been stayed. The alleged debtors argue that the pendency of the appeal renders the petitioning creditor's claim subject to a bona fide dispute and, thus, the cases must be dismissed as they were not filed by an eligible petitioner.

The Court finds that a claim based upon a judgment, in the absence of a stay, is not subject to a bona fide dispute for purposes of determining whether a petitioning creditor is eligible to commence an involuntary case. Thus, the Court will deny each of the alleged debtor's motions to dismiss and enter orders for relief.

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.[1] Venue of this proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

---

[1] The basis for this conclusion is discussed more fully below.

**PROCEDURAL AND FACTUAL BACKGROUND[2]**

Eugenia VI Venture Holdings, Ltd. ("Eugenia") entered into the Amended and Restated Credit Agreement ("Credit Agreement") with AMC Computer Corp. ("AMC Computer") in early 2003. Pursuant to the Credit Agreement, Eugenia extended up to $16 million in credit, secured by AMC Computer's working capital. AMC Investors, LLC and AMC Investors II, LLC (the "Alleged Debtors") are limited liability companies that control AMC Computer. Each of the Alleged Debtors executed an unconditional guaranty of AMC Computer's obligations to Eugenia under the Credit Agreement.

By May, 2005, AMC Computer was insolvent. Its board of directors voted to cease operations and approved an assignment for the benefit of creditors. In response, Eugenia notified AMC Computer that it was in default under the Credit Agreement, accelerated the outstanding obligations, and demanded immediate payment. Eugenia also demanded payment from the Alleged Debtors under their guarantees.

Eugenia filed suit against the Alleged Debtors in the New York Supreme Court to collect on the guarantees. The Alleged Debtors conceded liability but opposed the amount of damages sought by Eugenia. The trial court entered summary judgment in favor of Eugenia, awarding damages of approximately $8.3 million, consisting of principal of approximately $7.9 million, professional fees and expenses of approximately $400,000, and costs and disbursements of

---

[2] The essential facts of this case are undisputed.

$590. The Alleged Debtors appealed. The New York Supreme Court – Appellate Division affirmed the entry of summary judgment on liability, but remanded for a trial on damages.

The trial court held a two-day bench trial on damages. Shortly after the conclusion of the trial, the court vacated the original judgment, and entered judgment in favor of Eugenia awarding damages of approximately $10.75 million, consisting of principal and interest of approximately $7.0 million, accounting fees of approximately $1 million, professional fees and expenses of approximately $2.75 million, and costs and disbursements of $1090 (the "Amended Judgment"). Eugenia subsequently filed a judgment lien in Florida for the amount of the Amended Judgment.

The Alleged Debtors appealed only that portion of the Amended Judgment awarding professional fees.[3] The Amended Judgment was <u>not</u> stayed pending appeal. Prior to oral argument before the appellate court, Eugenia filed the involuntary petitions against the Alleged Debtors.[4] Eugenia is the sole petitioning creditor and asserts a claim in the amount of approximately $10.7 million.

Each of the Alleged Debtors filed a motion to dismiss the involuntary petition filed against it, asserting that Eugenia is not an eligible petitioning

---

[3] The Alleged Debtors also dispute two components of the amount of principal and interest awarded by the trial court. Nonetheless, approximately $6.9 million of the court's award is undisputed.

[4] The filing of the involuntary petitions under section 303 stayed the state court proceedings. 11 U.S.C. § 362(a).

4

creditor, or, in the alternative, that the Court should abstain. The issues have been fully briefed and are ripe for decision.

## LEGAL DISCUSSION

The motions before the Court are brought under Federal Rule of Bankruptcy Procedure 1011(b). Rule 1011(b) provides that defenses and objections to an involuntary petition shall be presented in the matter prescribed by Rule 12 of the Federal Rules of Civil Procedure. The Alleged Debtors move for dismissal of the involuntary petitions under Rule 12(b)(1) and (6).[5]

**A. Motion to Dismiss for Lack of Subject Matter Jurisdiction**

The Alleged Debtors move to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1). They argue that unless and until Eugenia shows that its claim is not subject to a bona fide dispute, this court lacks subject matter jurisdiction.

The Court disagrees. The requirements of section 303(b) "are not jurisdictional in the technical sense of subject matter jurisdiction, but are instead substantive matters which must be proved or waived for petitioning creditors to prevail in involuntary proceedings."[6] The requirement in section 303(b) that the

---

[5] It is unclear whether the motions to dismiss should be converted into motions for summary judgment, as both the Alleged Debtors and Eugenia have filed significant materials outside of the pleadings. *See* FED. R. CIV. P. 12(d). However, since no factual allegations in this case are disputed and the parties' disputes are questions of law, the particular procedural device used to contest the involuntary petition will not affect the outcome.

[6] *Rubin v. Belo Broad. Corp. (In re Rubin)*, 769 F.2d 611, 614 n.3 (9th Cir. 1985).

5

claim not be subject to bona fide dispute "goes to the merits - an element that must be established to sustain an involuntary proceeding."[7]

Of course, district courts have "original and exclusive jurisdiction of all cases under title 11"[8] and bankruptcy judges may hear those cases.[9] The filing of an involuntary petition, even when the alleged debtor challenges whether the petitioning creditor's claim is valid, creates a "case under title 11" and falls within the subject matter jurisdiction of this Court.[10]

**B. Motion to Dismiss for Failure to State a Claim**

The Alleged Debtors also move to dismiss the petition under Rule 12(b)(6) for failure to state a claim.

### i. Section 303 Requirements for Involuntary Petitions

Section 303 of the Bankruptcy Code governs involuntary petitions. Section 303(b) states, in relevant part:

> (b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—
>
> > (1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount, or an indenture trustee representing such a holder, if such non-contingent,

---

[7] *Id*. at 615.

[8] 11 U.S.C. § 1334(a).

[9] 28 U.S.C. § 157(b)(1).

[10] *But see Key Mechanical Inc. v. BDC 56 LLC (In re BDC 56 LLC)*, 330 F.3d 111, 118 (2d Cir. 2003) ("We believe the more sound view is that the requirement [that a petitioning creditor's claim not be subject to a bona fide dispute] is subject matter jurisdictional, and now so hold.").

6

> undisputed claims aggregate at least $13,475 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;
>
> (2) if there are fewer than 12 such holders . . . by one or more of such holders that hold in the aggregate at least $13,475 of such claims.[11]

Furthermore, section 303(h)(1) requires that where a petition is timely controverted, "the court shall order relief against the debtor in an involuntary case . . . [only if] the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute as to liability or amount."[12]

Taken together, these provisions establish a four-part test for consideration of a contested involuntary petition commenced by a sole petitioning claimholder:

> (1) the petitioning claimholder's claim is not contingent as to liability or subject to a bona fide dispute as to liability or amount;
>
> (2) the petitioning claimholder is undersecured by at least $13,475;
>
> (3) there are fewer than twelve claimholders; and
>
> (4) the alleged debtor is generally not paying its debts as they come due, unless such debts are the subject to a bona fide dispute as to liability or amount.[13]

---

[11] 11 U.S.C. § 303(b).

[12] 11 U.S.C. § 303(h)(1).

[13] *See In re Euro-American Lodging Corp.*, 357 B.R. 700, 712 (Bankr. S.D.N.Y. 2007); *In re Amanat*, 321 B.R. 30, 35 (Bankr. S.D.N.Y. 2005).

7

In this case, the Alleged Debtors do not contest that: (1) Eugenia holds an unsecured judgment in an amount over $13,475; (2) Eugenia is the sole creditor; and (3) the Alleged Debtors are not paying their debts as they come due. Rather, the Alleged Debtors assert that the amount of Eugenia's claim is subject to a bona fide dispute and, as such, the petition should be dismissed because they were not filed by an eligible petitioner.

### ii. Bona Fide Dispute

The Bankruptcy Code does not define "bona fide dispute." The Third Circuit has held that a bona fide dispute exists "[i]f there is a genuine issue of a material fact that bears upon the debtor's liability, or a meritorious contention as to the application of law to undisputed facts."[14] "Under this standard, the bankruptcy court must determine whether there is an objective basis for either a factual or a legal dispute as to the validity of debt."[15] However, the court's objective is to ascertain the existence of a dispute, not to actually resolve the dispute.[16] The burden is on the petitioning creditor to first establish a prima facie case that no bona fide dispute exists. Once a prima facie case has been

---

[14] *B.D.W. Assocs. Inc. v. Busy Beaver Bldg. Ctrs., Inc.*, 865 F.2d 65, 66 (3d Cir. 1989). *See also*, *Key Mechanical Inc. v. BDC 56 LLC (In re BDC 56 LLC)*, 330 F.3d 111, 117 (2d Cir. 2003); *Liberty Tool & Mfg. v. Vortex Fishing Sys., Inc. (In re Vortex Fishing Sys., Inc.)*, 277 F.3d 1057, 1064-65 (9th Cir. 2002); *Subway Equip. Leasing Corp. v. Sims (In re Sims)*, 994 F.2d 210, 220-21 (5th Cir. 1993), *cert. denied*, 510 U.S. 1049; *Rimell v. Mark Twain Bank (In re Rimell)*, 946 F.2d 1363, 1365 (8th Cir. 1991), *cert. denied*, 504 U.S. 941; *Bartmann v. Maverick Tube Corp.*, 853 F.2d 1540, 1543-44 (10th Cir. 1988).

[15] *In re Busick*, 831 F.2d 745, 750 (7th Cir. 1987). *See also Key Mechanical*, 330 F.3d at 117; *Bartmann*, 853 F.2d at 1544.

[16] *Key Mechanical*, 330 F.3d at 118 (citing *Rimell*, 946 F.2d at 1365).

8

established, the burden shifts to the alleged debtor to demonstrate the existence of a bona fide dispute.[17]

### iii. Unstayed Judgments

Eugenia argues that, as the holder of an unstayed final[18] judgment, it possesses a claim that is not contingent or subject to bona fide dispute. The logic behind this argument is explained in *In re Drexler*:

> [T]he court has concluded that . . . a claim based upon an unstayed judgment as to which an appeal has been taken by the debtor is not the subject of a bona fide dispute. Once entered, an unstayed final judgment may be enforced in accordance with its terms and with applicable law or rules, even though an appeal is pending. The filing of an involuntary petition is but one of many means by which a judgment creditor may seek to attempt collection of something upon its judgment. It would be contrary to the basic principles respecting, and would effect a radical alteration of, the long-standing enforceability of unstayed final judgments to hold that the pendency of the debtor's appeal created a "bona fide dispute" within the meaning of Code § 303.[19]

The majority of courts examining this issue have agreed with the *Drexler* court, finding unstayed final judgments are not subject to bona fide dispute.[20] In the recent case of *In re Byrd,* however, the Fourth Circuit disagreed, holding that the

---

[17] *Id*.

[18] The term "final judgment" is used here in the generic sense. However, the determination whether any particular decree constitutes a "final judgment" requires careful analysis of factual and legal concerns. *In re Drexler*, 56 B.R. 960, 967 n.10 (Bankr. S.D.N.Y. 1986).

[19] *Drexler*, 56 B.R. at 967 (citations omitted).

[20] *See In re Norris*, 1997 WL 256808, at *5 (5th Cir. 1997) (per curiam), *cert. denied*, 522 U.S. 935; *Euro-American Lodging*, 357 B.R. at 712; *Amanat*, 321 B.R. at 37; *In re Raymark Indus.*, 99 B.R. 298, 300 (Bankr. E.D. Pa. 1989).

9

existence of an unstayed final judgment does not necessarily end the bona fide dispute inquiry.[21]

> While we recognize the general enforceability of unstayed judgments, the text of the Bankruptcy Code establishes no such hard-and-fast rule. Section 303(b) prohibits a creditor from filing an involuntary petition if the creditor's "claim" is "the subject of a bona fide dispute." Section 101(5) then defines a "claim" in part as a "right to payment, whether or not such right is reduced to judgment." In other words, the Code does not make the existence of a bona fide dispute depend on whether a claim has been reduced to judgment. It permits some creditors who have not reduced their claims to judgment to file involuntary petitions, just as it prevents other creditors who have reduced their claims to judgment from filing.
>
> After all, the purpose of the "bona fide dispute" provision is to prevent creditors from using involuntary bankruptcy to coerce a debtor to satisfy a judgment even when substantial questions may remain concerning the liability of the debtor. Yet substantial questions may remain about a debtor's liability, notwithstanding judgments in a creditor's favor. In the present case, [state] trial courts ruled in [the petitioning creditor's] favor on particular factual or legal questions. These judgments go a long way toward establishing the absence of a bona fide dispute. Indeed it will be the unusual case in which a bona fide dispute exists in the face of claims reduced to state court judgments. Such judgments do not guarantee the lack of a bona fide dispute, however, especially absent rulings by [state] appellate courts or in the face of contrary rulings by other [state] trial courts. As a result, a creditor . . . may not reduce a claim to judgment elsewhere and then automatically seek enforcement in bankruptcy, at least where the

---

[21] *Platinum Fin. Servs. Corp. v. Byrd (In re Byrd)*, 357 F.3d 433, 438 (4th Cir. 2004).

10

>> judgment to be enforced is pending an appeal that presents substantial factual or legal questions.[22]

In other words, an unstayed judgment and a bona fide dispute under section 303 are not mutually exclusive concepts; it is possible for a creditor to possess an unstayed state court judgment, yet the creditor's claim may still be subject to a bona fide dispute.

Under *Byrd*, a creditor makes a prima facie showing of the absence of a bona fide dispute by presenting an unstayed judgment.[23] The burden then shifts to the alleged debtor to demonstrate the existence of a bona fide dispute.[24] *Byrd* requires the court in making that determination to conduct a derivative inquiry into the likelihood of success on appeal.[25]

This approach is unnecessarily intrusive into the trial court's ruling and undermines the objective analysis of bona fide disputes. In effect, *Byrd* turns the court into an odds maker on appellate decision-making.[26] The inherent difficulty and lack of necessity in engaging in such analysis is borne out by *Byrd* itself, as the court only made a cursory examination into the pending appeals, finding the alleged debtor presented no evidence to support his likelihood of success on

---

[22] *Id*. (citations omitted).

[23] *Id*. at 439.

[24] *Id*.

[25] *In re Graber*, 319 B.R. 374, 379 (Bankr. E.D. Pa. 2004) (noting *Byrd* requires an "inquir[y] into the genuineness of [the alleged debtor's] appeals").

[26] *See Norris*, 1997 WL 256808, at *5 ("To hold [that an unstayed final judgment may be subject to bona fide] would require the bankruptcy court to review the state court judgment in order to predict [the] chance of success on appeal . . . and would undermine the objective standard.")

appeal and, thus, "failed to raise any substantial factual or legal questions about the continued viability of those judgments."[27] The same analysis would have been reached simply by respecting the trial court's determination of this matter on the merits and the absence of a stay pending appeal.[28]

Moreover, the *Byrd* analysis is based upon a faulty premise. The definition of "claim" under the Bankruptcy Code includes a "right to payment, whether or not such right is reduced to judgment."[29] The *Byrd* court reads the phrase "whether or not such right is reduced to judgment" to mean that the definition of claim "permits some creditors who have not reduced their claims to judgment to file involuntary petitions, *just as it prevents other creditors who have reduced their claims to judgment from filing.*"[30] While this Court agrees that the relevant language clarifies that a right of payment may exist even if it has not

---

[27] *Byrd*, 357 F.3d at 441. The only other published decision applying the *Byrd* analysis is *In re Graber*. 319 B.R. 374 (Bankr. E.D. Pa. 2004). In *Graber*, a creditors obtained default judgments against Graber. *Id*. at 375-76. Graber filed petitions in state court to open and/or strike the default judgments, but before the matters were heard, the creditors filed an involuntary petition. *Id*. The bankruptcy court, following *Byrd*, conducted an analysis under state law to determine the likelihood that the state court would open the default judgments. *Id*. at 380. The bankruptcy court found it was missing some pleadings from the state court proceedings and left the record open so the parties could supplement it. *Id*. Thus, *Graber* demonstrates the inherent difficulty in applying the *Byrd* analysis and the potential problems associated with predicting outcomes in state courts. However, as default judgments may present factual issues different than those in the matter before the court, the question of whether the *Drexler* rule applies to default judgments is left until another day.

[28] Ultimately, the court in *Byrd* concluded the alleged debtor failed to demonstrate the existence of a bona fide dispute and that the creditor "was eligible to file an involuntary petition against [the alleged debtor] not simply because [it] had reduced its claims to judgment, but because [the alleged debtor] failed to raise any substantial factual or legal questions about the continued viability of those judgments." *Id*. at 441.

[29] 11 U.S.C. § 101(5).

[30] *Byrd*, 357 F.3d. at 438 (emphasis added).

been reduced to judgment; it disagrees that the entry of a judgment does not create a right to payment.

*Byrd* renders the entry of a judgment as completely irrelevant in determining the existence of a claim. This cannot be the correct reading of the statute. As the court in *Drexler* correctly noted, "[o]nce entered, an unstayed final judgment may be enforced in accordance with its terms and with applicable law or rules, even though an appeal is pending."[31] The holder of an unstayed final judgment may utilize an array of state court enforcement procedures, including the filing of a judgment lien, as Eugenia did in this case. To hold that an unstayed final judgment is enforceable in state courts and voluntary proceedings in federal bankruptcy court, but not for involuntary cases would "effect a radical alteration of . . . the long-standing enforceability of unstayed final judgments."[32]

Moreover, the analysis in *Byrd* runs counter to the *Butner* principle, which provides that, in the absence of a specific provision to the contrary, bankruptcy courts take non-bankruptcy rights and laws as they find them.

> Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to

---

[31] *Drexler*, 56 B.R. at 967

[32] *Id*.

13

> prevent a party from receiving "a windfall merely by reason of the happenstance of bankruptcy."[33]

Therefore, in a bankruptcy proceeding, if one party seeks an outcome that differs from the one a court would hold outside of bankruptcy, the court will require that party to identify a specific bankruptcy rule requiring that conclusion.[34]

The *Byrd* court identified the purpose of the "bona fide dispute" provision as being "to prevent creditors from using involuntary bankruptcy to coerce a debtor to satisfy a judgment even when substantial questions may remain concerning the liability of the debtor."[35]  However, the "array of state court enforcement procedures" available to judgment creditors outside of bankruptcy can and are used by those creditors to coerce payment.  Nonetheless, courts allow the enforcement of unstayed judgments that are subject to appeal.  There is simply no federal interest requiring a different result.

The Alleged Debtors had ample opportunity to litigate this dispute in state court, including during the proceedings leading up to the entry of the original judgment, an appeal, and a two-day trial on damages resulting in the Amended Judgment.  At no point in those proceedings have the Alleged Debtors ever opposed their liability on the guaranty, they have only opposed the amount of damages.  Indeed, at this point, the Alleged Debtors do not dispute the bulk of

---

[33] *Butner v. United* States, 440 U.S. 48, 55 (1979)

[34] Douglas G. Baird, ELEMENTS OF BANKRUPTCY 6 (Foundation Press 2006).

[35] *Byrd*, 357 B.R. at 438.

the damages awarded, i.e., approximately $6.9 million. The Amended Judgment was not stayed pending appeal. As such, it is a final, enforceable judgment.

The Court holds that the existence of a judgment by a court (other than a default judgment) that has not been stayed is, in and of itself, sufficient to establish that the claim underlying the judgment is not in bona fide dispute for purposes of determining whether a petitioning creditor is eligible to commence an involuntary case. No further inquiry is required. Accordingly, the Amended Judgment is not subject to bona fide dispute and Eugenia is the holder of a non-contingent, liquidated, undisputed claim in the amount of approximately $10.7 million, which exceeds the threshold amount of $13,475.[36] The Alleged Debtors do not contest the allegation that they have fewer than twelve creditors or that they are generally not paying their debts as such debts become due. The requirements of section 303 have been met and the entry of orders for relief is appropriate.

**C. Abstention**

The Alleged Debtors also argue that abstention is warranted under section 305(a). That section provides, in pertinent part, that:

> (a) The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if—

---

[36] At the very least, the undisputed claim is approximately $6.9 million.

(1) the interests of creditors and the debtor would be better served by such dismissal or suspension;[37]

"The courts that have construed § 305(a)(1) are in general agreement that abstention in a properly filed bankruptcy case is an extraordinary remedy, and that dismissal is appropriate under § 305(a)(1) only in the situation where the court finds that both 'creditors and the debtor' would be 'better served' by a dismissal."[38] "Granting an abstention motion pursuant to § 305(a)(1) requires more than a simple balancing of harm to the debtor and creditors; rather, the interests of both the debtor and its creditors must be served by granting the requested relief."[39] The movant bears the burden to demonstrate that the interests of the debtors and creditors would benefit from dismissal.[40]

Here, the Alleged Debtors argue the Court should abstain because the case is a two-party dispute. "Dismissal or suspension of a case may be appropriate when the bankruptcy case constitutes a two-party dispute between the debtor and a single creditor."[41] Courts generally abstain in two-party disputes where relief is available in a non-bankruptcy forum.[42] Resolution of

---

[37] 11 U.S.C. § 395(a).

[38] *In re Eastman*, 188 B.R. 621, 624 (B.A.P. 9th Cir. 1995).

[39] *In re Monitor Single Lift I, Ltd.*, 381 B.R. 455, 462 (Bankr. S.D.N.Y. 2008) (citing *In re Globo Comunicacoes e Participacoes S.A.*, 317 B.R. 235, 255 (S.D.N.Y. 2004)).

[40] *Id*.

[41] 2 COLLIER ON BANKRUPTCY ¶ 305.02[2] (15th ed. Rev. 1997).

[42] *In re Mountain Dairies, Inc.*, 372 B.R. 623, 634-35 (Bankr. S.D.N.Y. 2007); *In re Axl Indus., Inc.*, 127 B.R. 482, 484 (S.D. Fla. 1991).

these disputes has the potential to transform the bankruptcy process into a collections device, which it is not.[43]

Recent cases have put forward a litany of factors to gauge the overall best interests of the creditors and debtor. They include:

> (1) the economy and efficiency of administration;
>
> (2) whether another forum is available to protect the interests of both parties or there is already a pending proceeding in state court;
>
> (3) whether federal proceedings are necessary to reach a just and equitable solution;
>
> (4) whether there is an alternative means of achieving an equitable distribution of assets;
>
> (5) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case;
>
> (6) whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and
>
> (7) the purpose for which bankruptcy jurisdiction has been sought.[44]

While all factors are considered, they are not given equal weight in each case, nor should the Court conduct a strict balancing.[45]

---

[43] *Mountain Dairies*, 372 B.R. at 635.

[44] *In re Paper I Partners, L.P.*, 283 B.R. 661, 679 (Bankr. S.D.N.Y. 2002) (citing *In re 801 South Wells Street, L.P.*, 192 B.R. 718, 723 (Bankr. N.D. Ill. 1996)).

[45] *Monitor Single Lift*, 381 B.R. at 465.

Here, Eugenia's primary, and perhaps only reason for filing the involuntary petition is to seek the appointment of a chapter 7 trustee, who will possess the authority to investigate and, if appropriate, to pursue claims against the officers and directors of the Alleged Debtors relating to alleged fraud perpetrated against Eugenia by AMC Computer. While such a purpose for seeking bankruptcy jurisdiction may not be proper in every case, under these facts, Eugenia has a valid bankruptcy purpose. It is highly unlikely that Eugenia could pursue claims against the Alleged Debtors' officers and directors in either a direct or derivative suit.[46] Thus, either a bankruptcy trustee or state court receiver is necessary to pursue these potential assets, if appropriate. While receivership is certainly an option in this case, no such action has been instituted. The existing state court action (the appeal of the Amended Judgment) is not an action seeking the appointment of a receiver. No out-of-court workout between the parties is in the offing.

Furthermore, the geographic scope of the parties to this case spans state and national boundaries. The Alleged Debtors are Delaware LLC's managed from Florida. The involuntary petition for Eugenia reflects a mailing address in London. AMC Computer operated out of New York. The state court judgment was obtained in New York and filed as a judgment lien in Florida. While a state

---

[46] Under Delaware law, "the creditors of an *insolvent* corporation have standing to maintain derivative claims against directors on behalf of the corporation for breaches of fiduciary duties." *N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla*, 930 A.2d 92, 101 (Del. 2007). In this case, if a breach of fiduciary duty occurred, it occurred when the company was presumably solvent. Thus, the creditors would not have standing to sue for breach of a fiduciary duty until insolvency.

18

court receiver may certainly attempt to liquidate the Alleged Debtors, it would certainly be a more cumbersome and less efficient process for the receiver to obtain recognition in various jurisdictions, rather than permitting the use of federal bankruptcy jurisdiction.

The Court finds that it is not in the best interest of Eugenia for it to abstain. Moreover, since the Alleged Debtors are insolvent, non-operating limited liability companies that hold stock in a defunct computer company, it is not clear how a bankruptcy petition is harmful. In fact, the only entities that may be harmed by entering an order for relief in this case are the officers and directors of the Alleged Debtors. While these individuals may desire to avoid the threat of lawsuits pursued by a chapter 7 trustee, their interests are not relevant in a decision to abstain under section 305(a)(1). Accordingly, the Court declines to abstain in these cases.

### D. Attorney's Fees, Costs and Punitive Damages

The Alleged Debtors also request the Court award attorney's fees, costs, and punitive damages under 11 U.S.C. § 303(i). Section 303(i) permits a the Court to award fees and costs, as well as punitive damages if the involuntary petition was filed in bad faith. However, the Court may only award such fees if it dismisses the involuntary petition. Since orders for relief will be entered, the request for fees, costs, and punitive damages is moot.

## CONCLUSION

For the foregoing reasons, the Alleged Debtors' motions to dismiss are DENIED and the Court shall enter an ORDER FOR RELIEF against each of the Alleged Debtors.