## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re** | ) | **Chapter 7** |
| | ) | |
| **AMC Investors, LLC,** | ) | **Case No. 08-12264 (CSS)** |
| | ) | |
| **Debtor.** | ) | |
| | ) | |
| **In re** | ) | **Chapter 7** |
| | ) | |
| **AMC Investors II, LLC,** | ) | **Case No. 08-12265 (CSS)** |
| | ) | |
| **Debtor.** | ) | |

## EUGENIA VI VENTURE HOLDINGS, LTD.'S MOTION
## FOR STANDING TO ASSERT ESTATE CLAIMS

Eugenia VI Venture Holdings, Ltd. ("Eugenia"), by and through its undersigned counsel, moves for standing to assert certain estate claims belonging to AMC Investors, LLC and AMC Investors II, LLC (together, the "Debtors"), as set forth in the attached complaint (the "Adversary Complaint") (attached hereto as Exhibit A). In further support of this motion, Eugenia respectfully states as follows:

### Introduction[1]

1.      Bankruptcy courts hold the power to grant creditors standing to assert estate claims where the debtor refuses to bring the claim and prosecuting the claim will maximize the value of the estate. That is the case here. The chapter 7 trustee effectively is unable to bring claims against the Debtors' fiduciaries because he lacks the funding to prosecute a lawsuit. Eugenia, as the estates' sole creditor, proposes to assume the entire expense of the lawsuit and assert the claims as an estate representative. With no downside to the estate and significant

---

[1] Terms not defined in this Introduction have the same meaning as ascribed herein.

upside, the Court, exercising its gatekeeper role as protector of the estate, should grant Eugenia

standing to assert the claims on behalf of the estate.

## Jurisdiction

2.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.

This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court

pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

### A.    The Parties

3.      The Debtors are two investment vehicles that owned the stock of AMC Computer

Corporation ("AMC Computer"), a now-defunct information technology services company.

Eugenia is the Debtors' sole creditor.

4.      The Debtors are managed and controlled by a group of closely affiliated entities,

all with some form of Maplewood in their titles (collectively, the "Maplewood Entities"). *See*

Transcript of December 16, 2009 Hearing Before the Honorable Christopher S. Sontchi ("12/16

Tr.") at pp. 10-11 (copy attached hereto as Exhibit B) (Debtors' counsel:  Maplewood Entities

are "calling the shots" for the Debtors).  The Maplewood Entities are controlled by an individual

named Robert Glaser.  The Maplewood Entities managed the Debtors' investment in AMC

Computer.

5.      The Debtors owe Eugenia more than $10 million pursuant to an unconditional

guarantee. *See Declaration of Edward Smith in Support of Involuntary Petition against AMC*

*Investors LLC and AMC Investors II, LLC*, dated September 30, 2008 ("Smith Dec.") at ¶ 7.

After obtaining a judgment against the Debtors in New York state court, Eugenia commenced

these involuntary cases in September 2008, and the Court entered orders for relief on June 5,

2009.

RLF1 4021969v. 1

**B.    Procedural Background**

6.    The Debtors' relationship with AMC Computer began in 2000 and 2001, when, through several transactions, the Debtors invested approximately $28.5 million in the company.

7.    In 2003, AMC Computer entered into a $16 million credit agreement with Eugenia (the "Credit Agreement"). As a condition to Eugenia's loan, the Debtors executed unconditional guaranties of AMC Computer's obligations under the Credit Agreement. *See* Augustin Decl. ¶ 4.

8.    In May 2005, Eugenia learned that AMC Computer had engaged in fraudulent activity relating to its obligations under the Credit Agreement and was insolvent. Both the fraud and the insolvency constituted a default under the Credit Agreement.

9.    AMC Computer was unable to repay its obligations under the Credit Agreement, so Eugenia demanded payment from the Debtors under their guaranty. The Debtors refused to pay the amount demanded, which prompted Eugenia to commence legal proceedings in New York. After a trial, appeal and remand, the proceedings culminated in a judgment for Eugenia entered by the New York Supreme Court in July 2007 in the amount of $10,710,455. The Debtors appealed the judgment, though they did not obtain a stay pending appeal. The appeal itself currently is stayed by these cases. The judgment remains unpaid and was the basis for commencing these involuntary cases.

10.    Unable to collect, Eugenia has pursued alternative methods to attempt to recover what it is owed. Eugenia commenced post-judgment collection proceedings in Florida, but Eugenia's efforts there proved unsuccessful.

11.    As a shareholder of AMC Computer, Eugenia also commenced proceedings in federal court in New York on behalf of AMC Computer against its fiduciaries for claims arising from the Credit Agreement, namely, fraud and breach of fiduciary duty. But Eugenia's efforts

there proved unsuccessful as well. *See Eugenia VI Venture Holdings, Ltd. v. Glaser*, 370 Fed. Appx. 197, 199 (2d Cir. Mar. 23, 2010), affirming *In re Eugenia VI Venture Holdings, Ltd. Litigation*, 649 F.Supp.2d 105 (S.D.N.Y. 2008).

C.   **The Complaint**

12.    Eugenia commenced these involuntary cases so that the "bright light of bankruptcy" could scour the Debtors of Maplewood's influence and put them under the administration of an independent chapter 7 trustee. *See In re AMC Investors LLC*, 406 B.R. 478, 489 (Bankr. D. Del. 2009).   Eugenia now seeks authority to file the attached Adversary Complaint, which asserts causes of action on behalf of the Debtors' estates against the Maplewood Entities.

13.    The gravamen of the Complaint is breach of fiduciary duty.   The Maplewood Entities owed the Debtors fiduciary duties by virtue of their control and management of the Debtors.   Adversary Compl. ¶ 1.   When the Debtors invested in AMC Computer in 2001, they acquired sufficient voting power to elect the majority of AMC Computer's board of directors. *Id.* ¶ 22.   As the Debtors' manager, the Maplewood Entities appointed four individuals to the six-person board.   *Id.* ¶ 23.   All four individuals were members, limited partners and/or employees of the Maplewood Entities.   *Id.* ¶¶ 24-28.   The Complaint alleges that these individuals performed few of the tasks typically performed by directors and that the Maplewood Entities breached their fiduciary duties of care by failing to appoint qualified and diligent individuals and by failing to monitor the directors' activities. *Id.* ¶¶ 1; 30-31; 75-80.   Without a properly functioning board, AMC was forced to cease operations, thereby wiping out the Debtors' $28.5 million investment. *Id.* ¶¶ 1; 74; 91.   Since the Debtors' shares of AMC Computer were their sole asset, the Debtors were left unable to satisfy the $10.8 million judgment owed to Eugenia. *Id.* ¶¶ 12-13.

4

## Relief Requested

Eugenia respectfully requests that the Court enter the proposed order attached hereto as Exhibit C authorizing Eugenia to prosecute the Adversary Complaint on behalf of the Debtors' estates.

## Basis for Relief

14.    A bankruptcy court, as a court of equity, possesses the power to authorize a creditors' committee to assert causes of action belonging to the estate. *Official Committee of Unsecured Creditors of Cybergenics Cop. v. Chinery*, 330 F.3d 548, 580 (3d Cir. 2003). Although *Cybnergenics* dealt with creditors' committees and not with individual creditors, courts in this district have applied the same reasoning to individual creditors' requests for derivative standing. *See Infinity Investors Ltd. v. Kingsborough (In re Yes! Entm't Corp.)*, 316 B.R. 141, 145 (D. Del. 2004) ("Although the Third Circuit discussed creditors' committees specifically, the Court is persuaded that its decision is applicable here"; reversing bankruptcy court and granting standing to individual creditor).

15.    A three factor test governs whether to grant derivative standing:

> Although *Cybergenics* did not specifically lay out the procedures that should be followed in allowing creditors derivative standing, the Third Circuit expressed its agreement with the approaches taken by the Second and Seventh Circuits. Under these guidelines, derivative standing requires: (1) a colorable claim, (2) that the trustee unjustifiably refused to pursue the claim, and (3) the permission of the bankruptcy court to initiate the action.

*Infinity Investors*, 316 B.R. at 145; *see also* 7 COLLIER ON BANKRUPTCY, ¶ 1103.05[6][a] at 1103-30-31 (16th ed.) (setting forth same test).

## A.    The Trustee Is Unable To Pursue Claims Against The Maplewood Entities

16.    An "unjustifiable" failure to bring a claim does not require an improper motive or bad faith on the trustee's part. "Rather, a debtor's failure to bring a claim is deemed to be

5

RLF1 4021969v. 1

unjustifiable when the committee has presented a colorable claim that on appropriate proof would support recovery, and the action is likely to benefit the reorganization of the estate." *Adelphia Commc'ns Corp. v. Bank of America, N.A. (In re Adelphia Commc'ns Corp)*, 330 B.R. 364, 374 n.19 (Bankr. S.D.N.Y. 2005). As the *Adelphia* court recognized, debtors may choose not to bring viable claims for any number of reasons: "[d]ebtors sometimes lack the inclination, *or the means*, to bring actions that should be prosecuted." *Id.* at 373 (emphasis added). Whatever the reasons for a debtor's failure, granting derivative standing to creditors solves the problem by allowing a different party not afflicted by those reasons to assert the claims on behalf of the estate, thereby preserving the claims for the estate.

17.    Here, the chapter 7 trustee lacks the funding to pursue litigation against the Maplewood Entities on behalf of the estate, and therefore effectively lacks the means to bring the lawsuit. Much like a debtor that cannot pursue a cause of action because of a conflict, the trustee's inability to pursue causes of action for lack of funding is sufficient "delinquency" to satisfy the "unjustifiable failure" standard. *See Official Committee of Unsecured Creditors v. Cablevision Systems Corp. (In re Valley Media, Inc.)*, 2003 WL 21956410, at *2 (Bankr. D. Del. 2003) (granting derivative standing because conflict prevented debtor from asserting claim).

18.    Other than the chapter 7 trustee, the only possible parties that may assert the claims here are Eugenia or the Debtors themselves. But the Debtors still are being managed by the Maplewood Entities, who have not been displaced by the trustee. The Complaint here asserts claims against the Maplewood Entities and their principals or employees. Obviously, the Maplewood Entities hold no interest in asserting causes of action against themselves. The Debtors' conflict of interest thus leaves Eugenia as the most appropriate party to assert claims on behalf of the estates.

RLF1 4021969v. 1

19.    Compounding the need for Eugenia to be granted standing to pursue claims on behalf of the Debtors is the approaching expiration of Bankruptcy Code section 108(a)'s two-year extension of the limitations period for bringing actions. The impending expiration of the statute of limitations on June 5, 2011 further supports granting Eugenia standing. *See Infinity Investors*, 316 B.R. at 145 ("Further, Infiniti only filed the Complaint when the statute of limitations was about to expire, and the Chapter 11 Trustee refused to act based on a lack of familiarity with the facts supporting the claim"; granting creditor standing). As the only creditor of the Debtors estates' and the only other party capable of prosecuting the litigation, Eugenia should be granted standing lest the claims be lost.

20.    Finally, Eugenia has informed the trustee about its intent to seek the relief requested by Eugenia under this motion and to prosecute the Complaint as an estate representative. Although the trustee has not had an opportunity to respond, Eugenia will have such further discussions with the trustee as the trustee may want to address any concerns that he may have regarding the relief requested hereunder.

**B.    The Complaint's Claims Are Colorable**

21.    "Case law construing requirements for colorable claims has made it clear that the showing is a relatively easy one to make." *Adelphia*, 330 B.R. at 376. The purpose of the requirement is to protect the estate by ensuring that estate resources will not be spent pursuing senseless causes of action. As the *Adelpia* court concluded, "[c]ommittees do not have to show a likelihood of success on the merits. Rather, those proposing to pursue litigation on behalf of an estate must give the Court comfort that their litigation will be a sensible expenditure of estate resources." *Id.* at 386. The court explained, "[t]hat means, as a practical matter, providing the Court with a predicate for concluding that the claims will, if proven, provide a basis for recovery, and that the proposed litigation will not be a hopeless fling. It also means, as a practical matter,

7

that the prospective rewards can reasonably be expected to be commensurate with the litigation's foreseeable cost." *Id.* The court continued: "[b]ut no more than that is required, and the Court must be mindful of the purposes for its inquiry. It is not for the protection of defendants sued or to be sued by a committee on behalf of an estate, whose defenses can be fully and fairly considered in the plenary litigation to be prosecuted—just as they would if the defendants had been sued by a debtor (or a nondebtor) directly. Rather, the purpose of the bankruptcy court's gatekeeper role is to protect the estate, to ensure that the litigation reasonably can be expected to be a sensible expenditure of estate resources, and will not impair reorganization." *Id.*

22.    Here, there is no cost to the Debtors' estates—Eugenia will bear the entire expense of prosecuting the litigation. Indeed, the Debtors purportedly have no funds to lose. Yet the potential benefit to the estate is significant: the recoupment of the Debtors' $28.5 million investment for the benefit of their estates. So the litigation can proceed at no cost to the Debtors' estates, with a potentially large upside. And because this is a chapter 7 case, there is no risk that the lawsuit will impair the Debtors' reorganization. Given the lack of any downside to the estate, the Court, as gatekeeper, can satisfy itself that there is no impairment to the Debtors' estates by granting Eugenia derivative standing to pursue estate claims—the litigation is consistent with the maximization of the value of the Debtors' estates; indeed, the estates have nothing to lose.

23.    In addition, the Adversary Complaint sets forth plausible claims that, if proven, will provide a basis for recovery. The Adversary Complaint is premised on the fiduciary duties owed by the Maplewood Entities to the Debtors. This is separate from what was litigated in the New York federal courts. There, Eugenia asserted direct claims of fraud as well as derivative claims on behalf of AMC Computer. Importantly, the Court there never decided whether any

8

party had breached its fiduciary duty to the Debtors, but rather it dismissed the actions because Eugenia could not prove that the AMC Computer was solvent in January 2003 (the time that the parties entered into the Credit Agreement), and therefore could not prove damages. *See Eugenia VI Venture Holdings, Ltd. v. Glaser*, 370 Fed. Appx. 197, 199 (2d Cir. Mar. 23, 2010). Here, however, the Debtors invested in AMC Computer two years earlier in 2001, at a time when AMC Computer was solvent. *See* Adversary Compl., ¶ 20. Thus, unlike the prior case, where 2003 was the appropriate benchmark year for measuring damages, in the instant case, 2001 is the appropriate time to measure damages. Given this critical factual difference, and the fact that no court has ever decided the issue of whether the Maplewood Entities committed a breach of fiduciary duty against the Debtors, a ruling on the issue by this Court will not upset, affect or be affected by the Second Circuit's decision regarding Eugenia's inability to show damages based on the later, 2003 benchmark. Further, to the extent that the Maplewood Entities dispute the Debtors' solvency in 2001, that is not an appropriate question to resolve at this stage because it is a fact question appropriate for trial. *See, e.g., In re DBSI, Inc.*, --- B.R. --, 2011 WL 204522, at *4 (Bankr. D. Del. Jan. 11, 2011) ("insolvency is generally a factual determination not appropriate for resolution in a motion to dismiss").

## Notice

24.     Notice of this Motion has been given to the parties specified in Local Rule 2004-1, the chapter 7 trustee, United States Trustee, counsel to Debtors, and all parties requesting notices in the Debtors' cases pursuant to Bankruptcy Rule 2002. Eugenia submits that no other or further notice need be provided.

RLF1 4021969v. 1

## Conclusion

Because granting Eugenia standing to assert estate causes of action bears no downside to the estates and a significant upside, Eugenia requests that the Court grant the proposed order attached hereto as Exhibit C and grant such other and further relief as the Court deems just and proper.[2]

Dated:  May 19, 2011
        Wilmington, Delaware

_____
Mark D. Collins (No. 2981)
Marcos A. Ramos (No. 4450)
Cory D. Kandestin (No. 5025)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 N. King Street
P.O. Box 551
Wilmington, Delaware 19899
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701

-and-

Mitchell A. Karlan
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193

*Attorneys for Eugenia VI Venture Holdings, Inc.*

_____

[2] To the extent necessary to preserve the claims, Eugenia reserves its right to file the Complaint and seek *nunc pro tunc* relief.

RLF1 4021969v. 1