## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------x
| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| | : | Case No. 08-12264 (CSS) |
| AMC Investors, LLC, | : | |
| | : | |
| Debtor. | : | |

-------------------------------------------------------x


-------------------------------------------------------x
| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| | : | Case No. 08-12265 (CSS) |
| AMC Investors II, LLC, | : | |
| | : | |
| Debtor. | : | |

-------------------------------------------------------x

## DEBTORS' COMBINED OBJECTION
## TO EUGENIA VI VENTURE HOLDINGS LTD.'S
## MOTION FOR STANDING TO ASSERT ESTATE CLAIMS

Debtors AMC Investors, LLC, and AMC Investors II, LLC (collectively, the "Debtors" or the "AMC Investors Entities"), by and through undersigned counsel, hereby file this combined Objection to the Motion of Eugenia VI Venture Holdings, Ltd. ("Eugenia"), for standing to assert estate claims against MapleWood Holdings LLC, MapleWood Management LP, MapleWood Partners LP, Robert V. Glaser, and Robert J. Reale (collectively, the "MapleWood Parties"), and respectfully state as follows.

## SUMMARY

1.    For over six years, Eugenia has been unsuccessfully litigating its personal vendetta against the MapleWood Parties relating to the May 2005 demise of AMC Computer Corp. ("AMC Computer") that allegedly caused Eugenia to suffer losses on its credit facility to AMC Computer.  Eugenia has spent countless millions of dollars in legal fees and costs pursuing these litigations, and the MapleWood Parties in turn have been forced to spend millions of dollars to defend themselves.

2.      At nearly every turn, the MapleWood Parties have been successful in defending themselves.[1]    Most important, when Eugenia sued Glaser and Reale for these identical allegations in federal court in the Southern District of New York, claiming fraud and breach of fiduciary duty at AMC Computer, Eugenia **lost** on summary judgment.  *In re Eugenia VI Venture Holdings, Ltd. Litig.*, 649 F. Supp. 2d 105 (S.D.N.Y. 2008), attached as **Exhibit 2**.  That court noted that Eugenia suffered no out-of-pocket losses because Eugenia **made** money on its credit facility to AMC Computer, and dismissed Eugenia's claims of breach of fiduciary duty because Eugenia could prove no harm to AMC Computer from the MapleWood Parties and the other directors' alleged improprieties.  *Id*. at 121 ("In fact, [Eugenia] walked away from the bargain with $3.3 million more in its pockets than it had before entering the Agreement.").  The United States Court of Appeals for the Second Circuit affirmed that decision, finally disposing of Eugenia's claims of fraud and breach of fiduciary duty at AMC Computer.  *Eugenia VI Venture Holdings, Ltd. v. Glaser*, 2010 WL 1049289 (2d Cir. Mar. 23, 2010), attached as **Exhibit 3**.[2]

---

[1]  In the fifteen-plus cases that Eugenia and its sister company Casita LP ("Casita") have filed relating to these identical facts, Eugenia's only "victory" was to obtain a judgment against the Debtors on a guaranty, which underlies this involuntary bankruptcy proceeding.  In that case, the Debtors conceded liability and the only issue was the amount of damages.  After judgment was initially entered for Eugenia, the Debtors successfully appealed the judgment.  *See* December 5, 2006 Order of the Supreme Court of New York, Appellate Division, First Department, attached as **Exhibit 1**.  After remand and a new trial, the New York state court awarded $10 million in damages, which the Debtors again appealed.  That appeal remains pending and subject to the automatic stay because, shortly before oral argument was scheduled in October 2008, Eugenia filed these involuntary bankruptcy petitions rather than face certain defeat again in the New York Appellate Division.  Because the Debtors are special-purpose holding companies who were contractually required by Eugenia to have no operations and no assets other than ownership of common stock in AMC Computer, the Debtors remain judgment proof.  The only amounts that Eugenia has collected on the underlying guaranty judgment is approximately $24,000 that remained forgotten in one of the Debtors' bank accounts, had escheated to the State of Florida, and was voluntarily turned over to Eugenia by the Debtors.

[2]  Eugenia's Second Circuit petition for panel rehearing, or in the alternative, for rehearing *en banc*, was summarily denied.

3.      Now, incredibly, Eugenia seeks yet another bite at the same rotten apple. Eugenia's proposed Adversary Complaint rehashes the same allegations about alleged accounting fraud and breaches of fiduciary duty at AMC Computer, that have already been decided in federal court.[3]

4.      This Court should not permit Eugenia to abuse the bankruptcy process to re-try these same claims yet again, as Eugenia cannot show any standing to pursue these claims on behalf of the bankruptcy estate.

5.      As a preliminary matter, there is no authority to allow a creditors' committee (or a sole creditor like Eugenia) to prosecute estate claims because this is a Chapter 7 case with a Trustee in place.  Moreover, even if this were a Chapter 11 case, Eugenia could not show an "unjustifiable" failure on the Trustee's part to bring these claims, because Eugenia's Motion makes clear that it did not even bother to wait for the Trustee to make his own decision as to whether to bring these claims before Eugenia filed its Motion.

6.      Next, Eugenia's proposed claims are not colorable for three important reasons. First, Eugenia's claims are clearly barred by the three-year statute of limitations to bring breach of fiduciary duty claims under Delaware law.  It is undisputed that on May 5, 2005, Mr. Glaser from MapleWood called Ekkehart Hassels-Weiler from Eugenia and alerted him to possible accounting mis-statements at AMC Computer which prompted Eugenia immediately to declare a default and suspend additional advances to AMC Computer under Eugenia's credit facility.[4]  The

---

[3]  This is actually Eugenia's third bite at this same apple.  Eugenia's sister company Casita filed suit against the MapleWood entities and Mr. Glaser in New York Supreme Court in a derivative action purportedly brought on behalf of one the Debtors' parent companies related to the same tired allegations of accounting fraud at AMC Computer.  That case remains pending and is being prosecuted by counsel other than Gibson Dunn, who filed the motion here, because Gibson Dunn was disqualified as counsel in that case.

[4]  Indeed, it was Eugenia's action that caused the demise of AMC Computer, which was attempting to sell its operating unit to give it the cash needed to pay Eugenia in full on its loan.

3

involuntary bankruptcy proceedings were filed more than three years later, and there never was any action brought for alleged breach of fiduciary duty on the Debtors' behalf prior to expiration of the limitations period.  Second, Eugenia's proposed claims are barred by collateral estoppel because they were fully litigated in federal court in New York where Eugenia lost on summary judgment, as affirmed by the Second Circuit.  Third, Eugenia proposes to step into the shoes of the Debtors, and its claims therefore would be barred by the doctrine of *in pari delicto*.

7.      Therefore, this Court should deny Eugenia's Motion and reserve jurisdiction to award fees and costs to the Trustee and the Debtors for needing to respond to this frivolous Motion.

## ARGUMENT

**A.      Eugenia Lacks Standing To Bring Claims in These Chapter 7 Cases.**

8.      As an initial matter, Eugenia's motion for standing to assert certain estate claims belonging to the Debtors must be denied because Eugenia, as Debtors' creditor, is precluded from commencing any such claims in a Chapter 7 proceeding in place of the appointed Trustee.

9.      Eugenia's argument misses the mark, and relies upon authority granting a creditor or a creditors' committee the right to assert a cause of action belonging to the bankrupt estate in Chapter 11 cases.  While it is not disputed that a bankruptcy court, in Chapter 11 cases, holds the power to authorize a creditors' committee, or even, in some limited cases an individual creditor, to assert claims belonging to the estate, such power should only be granted under "appropriate circumstances." *Official Committee of Unsecured Creditors v. Cablevision Systems Corp. (In re Valley Media, Inc.)*, No. 01-11353 (PJW), ADV. 02-04553, 2003 WL 21956410, at *2 (Bankr. D. Del. Aug. 14, 2003); *see also Official Committee of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548, 580 (3d Cir. 2003); *Infinity Investors Ltd v. Kingsborough (In re Yes! Entm't Corp.)*, 316 B.R. 141, 145 (D. Del. 2004).  Such "appropriate circumstances"

4

include actions "to avoid fraudulent transfers for the benefit of the estate" and "in the context of a § 542(a) turnover action or a § 547(b) preference action" in Chapter 11 cases. *Valley Media*, 2003 WL 21956410 at *2.

10.    However, Eugenia fails to provide any support for its assertion that a similar power extends to the bankruptcy court in Chapter 7 cases. In fact, case law suggests that the Third Circuit's holding in *Cybergenics*, which Eugenia cites for this proposition, is limited to Chapter 11 cases. *In re Price*, 370 F.3d 362, 369 n. 4 (3d Cir. 2004) ("In *Cybergenics*, for example, this Court analyzed the meaning of a Bankruptcy Code provision with reference to several contextual features including related provisions, ***the role of creditors in chapter 11 bankruptcy proceedings***, and the equitable powers of bankruptcy courts to achieve the goals of the Code.") (emphasis added). Moreover, the Third Circuit's decision in *Cybergenics* "is based on the court's articulated desire ***to interpret Chapter 11 as a whole and emphasized that most Chapter 11 cases do not have a trustee***." *In re Hannah*, 316 B.R. 57, 61 (Bankr. D.N.J. 2004) (emphasis added).

11.    Otherwise stated, the Third Circuit's decision in *Cybergenics*, affording standing to the creditors' committee in a Chapter 11 case for the benefit of all creditors, does not apply to a Chapter 7 case because "the trustee has a unique and defined role" in such cases. *In re Hannah*, 316 B.R. at 61 (citing *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 7, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000)). Further, "[a] trustee is always in place, and thus much of the rationale relied upon by the *Cybergenics* court for holding that a committee of unsecured creditors has standing in a Chapter 11 case to bring an action . . . is not applicable in a Chapter 7 or 13 case." *In re Hannah*, 316 B.R. at 61.

12.    This result is warranted because "with regard to Chapter 7 cases — in contrast to Chapter 11 cases — there appears to be no textual basis in the Bankruptcy Code to support the

5

notion that a non-trustee, such as a creditor: (a) has independent standing to pursue chapter 5 avoidance actions or other estate causes of action; or (b) may be granted derivative standing." *In re Cooper*, 405 B.R. 801, 807 (Bankr. N.D. Texas 2009). "Moreover, there is generally not any extra-textual, equitable grounds for granting a non-trustee derivative standing." *Id.*

13.     A creditor, in a Chapter 7 case, lacks independent standing to pursue a cause of action owned by the estate "because of the trustee's <u>exclusive</u> authority to collect property of the estate granted in Section 704, and further because of his exclusive role as 'representative of the estate' pursuant to Section 323(a)." *In re Cooper*, 405 B.R. at 808. (emphasis in original).

14.     As for standing to assert a cause of action derivatively, "[i]n Chapter 7, unlike Chapter 11, there is always a trustee in place" who owes "an independent fiduciary duty, with a completely different perspective and interest in a bankruptcy estate than either a debtor or an individual creditor." *In re Cooper*, 405 B.R. at 812. "If creditors do not like the job the trustee is doing, they can file a motion to compel him or her to act, or a motion for removal of the trustee." *Id.* (*citing* 11 U.S.C. § 324).

15.     However, "allowing a creditor — a non-statutory fiduciary — to go forward in the Chapter 7 trustee's stead could facilitate a creditor '***hijacking***' a Chapter 7 bankruptcy case in a manner that Congress did not envision." *In re Cooper*, 405 B.R. at 812. (emphasis added). This Court should be concerned with the warning that "[a]n experienced bankruptcy trustee, unlike a potentially ***angry and out-for-justice creditor***, may have a better instinct for what is worth chasing and what is worth foregoing." *Id.* (emphasis added).

16.     As the Bankruptcy Court in *Cooper* concluded, as this Court should find, "it seems to be a generally unwise idea . . . to allow a creditor to usurp the trustee's role as a

representative of the estate (including being a gatekeeper for what actions make sense, weighing the potential benefits of litigation)."[5] *In re Cooper*, 405 B.R. at 813.

**B.    The Trustee Has Not Unjustifiably Refused To Bring Claims.**

17.    Even if the three-part test for granting derivative standing to creditors, *see* Motion, ¶ 15, applied in this Chapter 7 case, which it does not, Eugenia has not shown that the Trustee has "unjustifiably" failed to bring the proposed claims. *See In re Centaur, LLC*, No. 10–10799 (KJC), 2010 WL 4624910, at *4 (Bankr. D. Del. Nov. 5, 2010) ("The Third Circuit expressed its agreement with guidelines established by the Second and Seventh Circuits that entitlement to derivative standing requires (1) a colorable claim; (2) that the trustee unjustifiably refused to pursue the claim, and (3) permission of the bankruptcy court to initiate the action.").

18.    Eugenia provides no indication that the Chapter 7 Trustee has determined that the alleged causes of action would be worthwhile to pursue.  In fact, Eugenia filed the instant Motion prior to receiving any response from the Trustee concerning the allegations at issue.  Motion, ¶ 20.

19.    It is clear that Eugenia sat on its hands for years as this involuntary proceeding sat largely idle.  In April 2010, the Trustee made it clear that he lacked funding to review documents produced by the Debtors, and the Court invited Eugenia to fund his work.  *See* **Exhibit 4**, Transcript of April 26, 2010 hearing, at 31:1-8.  Eugenia did nothing to follow up.  At that same hearing, the Court allowed Eugenia to take additional discovery, but Eugenia did not follow up for months, and finally paid the amount necessary for the additional discovery to be completed in April 2011.

---

[5]    Allowing Eugenia to proceed on behalf of the Debtors is particularly unwise here, because the appeal of Eugenia's guaranty judgment against the Debtors is pending, and will continue once these bankruptcies have been discharged.

20.     Now, seventeen days before the time period under the Bankruptcy Code runs for the Trustee to bring any non-barred claims, Eugenia suddenly claims an "emergency" and seeks standing to bring claims.  It is clear that any emergency — or lack of time for the Trustee to evaluate whether it is in the Debtors' best interest to bring claims — is of Eugenia's own making.

21.     Eugenia argues that "the trustee's lack of funding is sufficient 'delinquency' to satisfy the 'unjustifiable failure' standard," and cites to *In re Valley Media, Inc.*, 2003 WL 21956410, at *2, to support this proposition.  Motion, ¶ 17.  However, the Bankruptcy Court in *Valley Media, Inc.* found delinquency and unjustifiable failure because "debtor's counsel [had] a conflict of interest in pursuing an estate claim so that it [was] effectively disqualified from pursuing an action which is otherwise a colorable claim."  2003 WL 21956410 at *2.  In *Valley Media, Inc.*, the Court did not suggest that a trustee's lack of funding was a delinquency or an unjustifiable failure, and Eugenia does not cite to any other case law to support this statement in its Motion.

22.     As such, Eugenia cannot satisfy the first prong of the test.

**C.     Eugenia's Proposed Adversary Complaint Is Not a Colorable Claim.**

23.     Moreover, Eugenia is not entitled to standing to assert the derivative claims in its proposed adversary complaint under the second prong of the test because it cannot maintain a colorable claim.  "In deciding whether there is a colorable claim, the court should undertake the same analysis as when a defendant moves to dismiss a complaint for failure to state a claim."  *In re Centaur*, 2010 WL 4624910, at *4 (citations omitted).

24.     Eugenia fails to present colorable claims for three important and distinct reasons.  First, Eugenia's claims would be barred by the statute of limitations.  Second, Eugenia's claims

8

would be barred by collateral estoppel.   Third, Eugenia's claims, stepping into the shoes of the Debtors, would be barred by the doctrine of *in pari delicto*.

### 1.    Eugenia's Claims Would Be Barred by Statute of Limitations.

25.    The Debtors are incorporated in Delaware; as such, Delaware law applies to the breach-of-fiduciary-duty claim, which involves the Debtors' internal affairs.   *See, e.g., In re Fedders North America, Inc.*, 405 B.R. 527, 539 (D. Del. 2009).

26.    It is well settled that Delaware law provides for a three year statute of limitations on breach of fiduciary duty claims.   10 Del. C. § 8106.   "The general law in Delaware is that the statute of limitations begins to run, *i.e.*, the cause of action accrues, at the time of the alleged wrongful act, even if the plaintiff is ignorant of the cause of action."   *In re Dean Witter P'ship Litig.*, No. CIV. A. 14816, 1998 WL 442456, *4 (Del. Ch. July 17, 1998).   Although the Bankruptcy Code provides a two year extension to the limitations period, *see* 11 U.S.C. § 108(a), it only applies if "such period has not expired before the date of the filing of the petition."   *Id.*

27.    The limitations period for Eugenia's claims has expired.   The bankruptcy petitions in these cases were filed on September 30, 2008.   In light of the three year statutory limitation for breach of fiduciary duty claims, in order to apply the two year extension provided in Section 108(a), the Debtors must not have had any reason to know that a wrong may have been committed at any time prior to **September 30, 2005**.   Unfortunately for Eugenia, both Eugenia and the Debtors were on inquiry notice of the basis for the asserted claims as early as **May 5, 2005**, but no later than **August 16, 2005**.

28.    The gravaman of Eugenia's proposed adversary complaint is that the putative defendants breached fiduciary duties owed to the Debtors by "failing to appoint qualified and diligent individuals [to AMC Computer's board of directors] and by failing to monitor the directors' activities."   *See* Motion, ¶ 13; *see also* Proposed Adversary Complaint, ¶¶ 1, 30-31,

75-80.   These purported breaches allegedly culminated in the dissolution of AMC Computer beginning in May 2005.   *See* Proposed Adversary Complaint, ¶ 74 (AMC Computer ceased operations shortly after Eugenia was "told that the borrowing base certificates were incorrect in May 2005.").

29.     Undoubtedly, the Debtors and Eugenia were on inquiry notice of a possible wrong on May 5, 2005, and this alone is enough to establish that the three year statute of limitations ran by ***May 5, 2008***.   Although Eugenia has not provided this Court with the exact date it was informed of inaccuracies with AMC Computer's borrowing base certificates, it is indisputable that the date was ***May 5, 2005***.   *See* Eugenia's June 3, 2005 Complaint, ¶ 10, attached as **Exhibit 5** ("On May 5, 2005, [Eugenia] was informed by other members of AMC's board of directors that defendant had submitted falsified borrowing base certificates in order to fraudulently obtain greater funding from [Eugenia] under the Credit Agreement.").   Eugenia's witness, Ekkehart Hassels-Weiler, testified in that case that, in May 2005, Mr. Glaser called him with suspicions he had with regard to borrowing base certificates submitted by AMC Computer to Eugenia. Hassels-Weiler Tr. at 166:24-167:10, attached as **Exhibit 6**.   Moreover, Mr. Hassels-Weiler also testified that he relayed this information, in May 2005, to his principal, the Grantor of the Eugenia Trust, Hans Werner Hector.   Hassels-Weiler Tr. at 348:13-23 ("In May 2005 . . . I informed [Mr. Hector] of the fraud that had unfolded at MapleWood and AMC").

30.     As such, there can be no doubt that Eugenia was fully aware, or at least on inquiry notice, of the alleged breaches of fiduciary duty by the MapleWood Parties on May 5, 2005.

31.     Even further, for the sake of argument, without conceding that the statute of limitations extended past May 5, 2008, there is other evidence that the statute of limitations ran prior to September 30, 2008.   Eugenia filed numerous lawsuits after the May 5, 2005 disclosure, one of which categorically pins the outside date of the limitations period at ***August 16, 2008***.

Three years earlier, on August 16, 2005, Eugenia sued Robert Glaser (one of the putative defendants to the proposed Adversary Complaint), for breach of fiduciary duty to AMC Computer, alleging many of the same actions or inactions alleged here.[6] *See* Eugenia's August 16, 2005 Complaint attached as **Exhibit 8**.

32.     In fact, the statute of limitations probably ran even earlier than any of the aforementioned dates.  Judge Batts in the Southern District of New York found that Eugenia's claims were barred because, among other things, Eugenia was presented with information, <u>far earlier than May 5, 2005</u>, to suggest that AMC Computer's accounts receivable were mis-stated:

> The Factual record leaves open no question that [Eugenia] had in its possession an abundance of information and unobstructed access to much more, and knew enough about AMC's precarious finances to warrant at least minimal scrutiny before relying blindly on the totals Defendants represented on the face of the borrowing base certificates.   [Eugenia's] reliance was unreasonable, and [Eugenia's] claims to fraud under the Credit Agreement fail as a matter of law.

*In re Eugenia VI Venture Holdings, Ltd. Litig.*, 649 F. Supp. 2d at 121.

33.     There is also no basis to toll the statute of limitations.   The statute of limitations starts to run when the plaintiff receives inquiry notice.  *Certainteed Corp. v. Celotex Corp.*, 2005 WL 217032, *7 (Del. Ch. Jan. 24, 2005).   Such inquiry notice does not require actual notice; rather, inquiry notice "exists when the plaintiff becomes aware of 'facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery [of injury.]'" *Id.*

34.     A review of each tolling exception demonstrates that none apply to save Eugenia's expired claims.  Neither Eugenia nor the Debtors can invoke the doctrine of inherently

---

[6]     Prior to that date, on July 14, 2005, the Debtors were named in a Third-Party Complaint in yet another case filed by Eugenia.  *See* July 14, 2005 Third-Party Complaint attached as **Exhibit 7**.  The statute of limitations calculated from that date would run on ***July 14, 2008***.

unknowable injuries because this tolling theory does not apply once "a plaintiff ha[s] 'reason to know' that a wrong has been committed." *In re Dean Witter*, 1998 WL 442456, *5. As discussed below, at the latest, Eugenia and Debtors were aware that a putative wrong may have been committed by May 5, 2005.[7] The tolling doctrine of fraudulent concealment also does not apply because the statute of limitations is only tolled "until [plaintiff's] rights are discovered or until they could have been discovered by the exercise of reasonable diligence." *Id*. Again, the May 5, 2005 disclosure destroys Eugenia's or the Debtors' ability to claim that any fraudulent concealment would toll the statute of limitations. Similarly, the theory of equitable tolling cannot apply because after May 5, 2005, Eugenia and the Debtors "knew or had reason to know of the facts constituting the wrong." *Id*. at *6. In short, once Eugenia and the Debtors were "objectively aware of the facts giving rise to the wrong" on May 5, 2005 — *i.e.*, once Eugenia and the Debtors were on inquiry notice of potential claims — the statute of limitations began to run. *Id*.

35.    Eugenia's obvious delay is not in accord with the expectation under Delaware law that plaintiffs are "expected to act with alacrity once [they] ha[ve] reason to suspect that [their] rights have been violated, and . . . the statute of limitations runs from the point at which . . . plaintiff[s], by exercising reasonable diligence, should have discovered [their] injury." *Certainteed Corp.*, 2005 WL 217032, *7. Indeed, as aptly noted in one Delaware decision, "[i]f all parties were allowed to toll the statute until they learned of the legal theory of a proposed action or so pursued an action, there would be no purpose to the statute of limitations." *Fooks v.*

---

[7]    Even though this argument pins the outside date of Eugenia and Debtors' knowledge of the purported fraud at AMC Computer on May 5, 2005, Judge Batts' ruling granting summary judgment against Eugenia on its claims made clear that Eugenia had information at its disposal that would have alerted it to the purported fraud long prior to that date.

*State Health and Social Servs.*, 1999 WL 743916, *4 (Del. Super. Ct. Sept. 14, 1999) (citations omitted).

36.    This case is remarkably similar to *In the Matter of Allpoints Warehousing in Liquidation, Inc.*, 259 B.R. 824 (D. Del. 2001).  In that case, involuntary Chapter 7 bankruptcy proceedings were initiated by the debtor's only creditor, who had obtained a $1.8 million judgment against the debtor.  *Id.* at 827.  The Trustee filed an adversary complaint against the debtor's ex-directors for breach of fiduciary duty.  *Id.* at 825.  The adversary complaint's allegations were based upon the same facts underlying the creditor's lawsuit, which was filed eight years prior.  *Id.* at 825, 829.  The *Allpoints* court granted summary judgment for the director defendants on their statute of limitations argument, holding that:

> it is clear that ***all*** parties in interest, including but not limited to the debtor, [the creditor and the director defendants], knew or should have known about the facts constituting the alleged wrongs no later than November 14, 1990, when [the creditor] brought suit . . . against the debtor and the [director defendants], alleging wrongs based upon the same facts, that is, the 1990 Transactions. Because the complaint at bar is premised on the 1990 Transactions and every party knew about said transactions more than three years before the petition date, plaintiff's suit is barred by the three-year statute of limitations of 10 Del. C. § 8106.

*Id.* at 829 (emphasis in original).

37.    The claims were brought by the Trustee in *Allpoints*, as opposed to one of the Debtor's creditors.  *Allpoints*, 259 B.R. at 825.  The Trustee in the *Allpoints* case was the same Trustee appointed in these matters, Jeoffrey Burtch.  In fact, Trustee Burtch extensively discussed the *Allpoints* case with the Court in these cases, at a hearing on December 16, 2009, where Trustee Burtch advised this Court that litigation here could end up being a similar waste of time to the *Allpoints* case.  *See* **Exhibit 9**, Transcript of December 16, 2009 Hearing, at 28:16-20 ("End result [in *Allpoints*] was a lot of time, a lot of expense, and it was for [naught].  I can see a

13

number of defenses in this case *in pari delicto*, things of that nature that were brought out in that litigation.  Similar situation.")

38.    The same reasoning that led the *Allpoints* court to grant summary judgment on statute of limitations grounds should apply here.  There is no question that Eugenia's purported claims are premised on actions that occurred than ten years ago.  *See* Motion, p. 9 ("[I]n the instant case, *2001* is the appropriate time to measure damages.") (emphasis added).  There is also no question that Eugenia and Debtors were objectively aware of facts giving rise to the purported wrongs on May 5, 2005, more than three years prior to the initiation of these bankruptcy proceedings.[8]  As such, Eugenia's claims are untimely and not colorable, and Eugenia's Motion for leave to file its proposed Adversary Complaint must be denied.

### 2.    Eugenia's Claims Would Be Barred by Collateral Estoppel.

39.    Eugenia's Motion also must be denied because all of its purported claims are barred by the doctrine of collateral estoppel.  These claims were litigated in full in the United States District Court for the Southern District of New York, where Eugenia's factually identical claims were dismissed on summary judgment, and affirmed on appeal.  The Eugenia litigation was hotly contested in federal court, with thousands of pages of discovery produced, numerous depositions taken, extensive briefing on summary judgment, a 170-page Statement of Material Facts, and a 50-page decision by Judge Batts.  The parties in the federal Eugenia litigation overlap with the proposed Adversary Complaint, as Eugenia was the plaintiff, Messrs. Glaser and Reale were defendants, and the Debtors, MapleWood Holdings LLC, and MapleWood Management were third-party defendants.

40.    All of the allegations in Eugenia's proposed Adversary Complaint arise from the facts underlying the claims asserted in the federal litigation and the extensive discovery that took

---

[8]  Further, these claims were litigated starting in June 2005.

14

place in that case.  *Compare* Proposed Adversary Complaint, attached as Exhibit A to Eugenia's Motion, to Defendants' Reply Statement of Material Facts as to Which There Does Not Exist a Genuine Issue, filed in the federal litigation, attached hereto as **Exhibit 10**.  District Judge Batts found that there was <u>no</u> fraud or breach of fiduciary duty at AMC Computer, and dismissed, with prejudice, all claims asserted with respect to such a purported fraud.  As such, Eugenia would be collaterally estopped from relitigating the issue of fraud or breach of fiduciary duty in connection with AMC Computer in this action.

41.    Under Delaware law, where the judgment to be given preclusive effect is made in a federal forum, the scope of that judgment, including the applicability of principles of res judicata and collateral estoppel, are governed by federal law.  *Harper v. Delaware Valley Broadcasters, Inc.*, 743 F.Supp. 1076, 1082 (D. Del. 1990) ("Delaware courts follow the Restatement (Second) of Conflicts of Law § 95 comment g . . .  The logical reading of comment g . . . is that the collateral estoppel effect of a prior judgment should be determined by the rules of the forum which rendered the judgment.").  In this case, because the judgment to be given preclusive effect was rendered by the Southern District of New York, federal principles of collateral estoppel apply.  *Id*.

42.    Under federal law, collateral estoppel applies if: "1) the issue sought to be litigated is identical to one decided in a prior action; 2) the issue is actually litigated in the prior action; 3) resolution of the issue is essential to a final judgment in the prior action; and 4) the party against whom collateral estoppel is sought had a full and fair opportunity to litigate the issue in the first action."  *Hamilton v. Leavy*, No. CIV. A. 94-336-GMS, 2001 WL 848603, at *9 (D. Del. July 27, 2001); *see also Ball v. A.O. Smith Corp.*, 451 F.3d 66 (2d Cir. 2006); *Howard Hess Dental Laboratories, Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 247-248 (3d Cir. 2010). Each of these elements requires a finding that Eugenia would be precluded under principles of

collateral estoppel from relitigating issues of fraud or breach of fiduciary duty with respect to AMC Computer.

43.    First, the identical issues were raised in the federal proceeding, which centered around allegations related to a purported fraud at AMC Computer and alleged breaches of fiduciary duty by AMC Computer's directors and persons associated with the MapleWood Parties:

> In its related suits before the Court, Plaintiff asserts claims of fraud and derivative claims of breach of fiduciary duty . . . against individual Defendants alleged to have been directors, "de facto director," [*i.e.*, Glaser] and majority shareholder of AMC. . . . Plaintiff alleges that these Defendants . . . ma[de] false, material statements of fact, and . . . intentionally conceal[ed] material facts about AMC's financial situation and history. Once the Agreement progressed, Plaintiff alleges that Defendants Reale and Glaser perpetrated, aided, and abetted fraud against Plaintiff by assisting, condoning, and directing the false statements made by their subordinates to induce Plaintiff to lend more money to AMC than it was authorized, given its famished accounts.

*In re Eugenia VI Venture Holdings, Ltd. Litig.*, 649 F. Supp. 2d. at 108. Eugenia's allegations in the present case regarding an alleged accounting fraud and related breach of fiduciary duty at AMC Computer raise the same controlling legal issues that were raised in the federal action.

44.    The essence of Eugenia's proposed Adversary Complaint is that the Debtors were harmed by actions that allegedly caused diminution in the value of their sole asset: common stock in AMC Computer. *See* Proposed Adversary Complaint, ¶ 91. However, the federal courts conclusively found that there was no harm to AMC Computer and dismissed Eugenia's derivative claims of breach of fiduciary duty there:

> ***Eugenia failed to adduce sufficient evidence to raise a genuine issue of material fact as to damages despite arguing that defendants-appellees caused the destruction of AMC [Computer] and 'rendered the company incapable of paying its debts, and substantially increased those debts.' That is, at the time the parties entered the Credit Agreement, AMC [Computer] was already insolvent. As a result, Eugenia cannot demonstrate that***

16

> ***thereafter defendants-appellees' mismanagement rendered the corporation insolvent. Eugenia's derivative fiduciary claims thus fail.***

*Eugenia VI Venture Holdings*, 2010 WL 1049289, at * 1 (emphasis added).

45.     The following table further compares the factual allegations raised in Eugenia's proposed Adversary Complaint to the issues actually litigated in the federal action.

| **Adversary Complaint Issues** | **Federal Litigation Issues** |
|---|---|
| AMC Computer's Board of Directors disregarded standard corporate governance. ¶¶ 1(a), 32-38, 75-80. | Ex. 10, SUMF ¶¶ 330-373. |
| AMC Computer's Board and the MapleWood Parties allowed "pre-billing" to overstate accounts receivable. ¶¶ 1(b), 55-56, 61-62. | "[Eugenia] alleges that all of these Defendants led AMC [Computer] to misrepresent repeatedly and materially the size of its accounts receivable to induce [Eugenia] to lend AMC [Computer] more money than the true value of its collateral would have permitted under the terms of the Revolver Loan." 649 F. Supp. 2d at 109. |
| AMC Computer's Board allowed AMC Computer to violate the Eugenia Credit Agreement by making false representations in connection with entry into the Credit Agreement. ¶¶ 1(c), 39-44. | "On the facts presented, there is no question that [Eugenia], a sophisticated investment entity, had such access to relevant information to preclude a claim to reasonable reliance and fraudulent inducement, and [Eugenia] has proffered no evidence to the Court that it was barred that access by Defendants. [Eugenia's] claim to fraudulent inducement into the Credit Agreement fails as a matter of law." 649 F. Supp. 2d at 120. |
| AMC Computer's Board allowed AMC Computer to borrow money and incur debt after AMC Computer was hopelessly insolvent. ¶ 1(d). | "[Eugenia] alleges that Defendants, as members of AMC [Computer]'s Board of Directors, 'de facto' chairman of the Board, and majority shareholder, owed fiduciary duties to AMC [Computer], and breached those duties, causing AMC [Computer] to expand its debt and deepen its insolvency to its detriment and ultimate collapse." 649 F. Supp. 2d at 109. |

SL1 1075868v1 070021.00011

| **Adversary Complaint Issues** | **Federal Litigation Issues** |
|---|---|
| AMC Computer's Board failed to obtain audited financial statements in accordance with GAAP. ¶¶ 1(e), 68. | "Under the Credit Agreement, AMC [Computer] was required to provide [Eugenia] with annual audited financial statements prepared by a nationally recognized accounting firm." 649 F. Supp. 2d at 114. |
| AMC Computer's Board misused the loan collateral owed to Eugenia, including payments to unsecured creditors and self-dealing transactions. ¶¶ 1(f), 64-65. | "However [Eugenia] accuses Defendants of self-dealing, such as using AMC [Computer] funds to pay themselves and AMC [Computer's] employees, pay fees to MapleWood and directors, and pay rent to Sonny Chabra vis-à-vis AMC [Computer's] realtor, Paran Realty, the Court finds no evidence to suggest that any of Defendants' actions were made in bad faith." 649 F. Supp. 2d at 126 (internal citations omitted). |
| Glaser was the de facto head of AMC Computer. ¶ 8. | "Robert V. Glaser, who [Eugenia] alleges to have been a 'de facto' Chairman of AMC [Computer's] Board." 649 F. Supp. 2d at 108; Ex. 10, SUMF ¶¶ 319-329. |
| The MapleWood Parties appointed the directors of AMC Computer. ¶ 23. | "Defendant Glaser . . . had the power to name a majority of [AMC Computer board of directors'] members as managing member of MapleWood Holdings, LLC, representing the majority of AMC [Computer's] shares." 649 F. Supp. 2d at 110-111. |
| AMC Computer failed to properly book accounts payable. ¶¶ 66-67. | Ex. 10, SUMF ¶ 277-278. |

46.    Second, there can be no question that these issues were actually litigated and decided by the federal court in its 50-page summary judgment order, and again by the Second Circuit in its decision affirming summary judgment.  The table above, as well as any cursory review of the pleadings and decisions on summary judgment, show that the exact same issues raised in the proposed Adversary Complaint were actually litigated in the federal litigation.

47.    Third, Eugenia, as the party to be precluded, had a full and fair opportunity to litigate the issue.  Eugenia was the plaintiff in the federal action, directly and derivatively on

behalf of AMC Computer, and now proposes to be the plaintiff in the Adversary Complaint, derivatively on behalf of the Debtors.  Eugenia proposes to be represented by the same counsel who prosecuted the underlying case, Gibson Dunn & Crutcher.  In addition, the Debtors themselves were parties to the federal action as well, via a third-party complaint.

48.    Fourth, resolution of the issues to be litigated here were necessary to support the final judgment in the federal action.  As discussed above, Judge Batts' summary judgment order makes that clear.

49.    Finally, to the extent that Eugenia claims there is lack of privity, or the issues are different now, because the federal action was a derivative breach of fiduciary duty action on behalf of AMC Computer and this is a putative derivative breach of fiduciary duty action on behalf of the Debtors, that distinction is of no moment.  It is undisputed that, as required by Eugenia in the credit agreement with AMC Computer, the Debtors were holding companies with no assets or operations other than to hold and vote their shares of common stock in AMC Computer.  Judge Batts found that there was no damage to AMC Computer from the MapleWood Parties' and others purported breaches of fiduciary duty to that entity.  That finding was made in a derivative action on behalf of all shareholders of AMC Computer that was prosecuted by Eugenia as one of those shareholders.  The Debtors also are shareholders of AMC Computer, and are bound by the conclusions in that underlying derivative action.  The actions alleged in the federal litigation to have constituted a breach of fiduciary duty are the same actions complained of here.  If, as was conclusively found by Judge Batts, there was no harm to AMC Computer from any alleged breaches of fiduciary duty, then logically there could be no derivative harm to the Debtors as shareholders in AMC Computer.  Therefore, even if the management of the Debtors engaged in the same (or other) conduct that constituted a breach of

fiduciary duty, there could be no damages recoverable by the Debtors in the Adversary Complaint either.

50.    Because Eugenia's proposed claims are barred by collateral estoppel, Eugenia cannot satisfy the second prong of the test.

### 3.    Eugenia's Claims Would Be Barred by *In Pari Delicto*.

51.    "The doctrine of *in pari delicto* provides that a plaintiff may not assert a claim against a defendant if the plaintiff bears fault for the claim." *In re Scott Acquisition Corp.*, 364 B.R. 562, 566 (Bankr. D. Del. 2007) (quoting *Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.,* 267 F.3d 340, 354 (3d Cir. 2001)). "To establish the defense of *in pari delicto,* the defendant must demonstrate that (1) as a direct result of its own actions, the plaintiff bears at least substantially equal responsibility for the violations it seeks to redress, and (2) preclusion of suit would not significantly interfere with the effective enforcement of the law and other important public policies." *AstroPower Liquidating Trust v. KPMG LLP*, Civil Action No. 06-469-JJF, 2007 WL 1549048, at *5 (D. Del. May 25, 2007).

52.    In *Lafferty*, the Third Circuit held that this doctrine may be applied to bar a bankruptcy trustee who has stepped into the shoes of a wrongdoing debtor. 267 F.3d at 360; *In re Student Finance Corp.*, 335 B.R. 539, 547 (D. Del. 2005); *AstroPower Liquidating Trust*, *id.* ("The doctrine of *in pari delicto* may be applied against a bankruptcy trustee standing in the shoes of the wrongdoing debtor.").

53.    Further, dismissal on the basis of the *in pari delicto* defense would be appropriate when the plaintiff can prove *no set of facts* that would entitle him to relief. *Buckley v. O'Hanlon*, No. 04-955GMS, 2007 WL 956947, at *8 (D. Del. Mar. 28, 2007); *see also Leveto v. Lapina,* 258 F.3d 156, 161 (3d Cir. 2001) ("Although *in pari delicto* is an affirmative defense, 'a complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative

20

defense . . . appears on its face.") (quoting *ALA, Inc. v. CCAIR, Inc.,* 29 F.3d 855, 859 (3d Cir. 1994)).

54.    Therefore, since Eugenia would be stepping into the shoes of the Debtors, Eugenia's claims also are not colorable due to the doctrine of *in pari delicto*.

## CONCLUSION

55.    This Court should deny Eugenia's Motion for standing to assert these rehashed claims.    For the foregoing reasons, the MapleWood Parties oppose Eugenia's motion, and respectfully ask this Court to deny the Motion and to reserve jurisdiction to award appropriate fees and costs to the Trustee and the MapleWood Parties in responding to the Motion.

Dated: May 27, 2011
Wilmington, Delaware

By: /s/ *Maria Aprile Sawczuk*
Maria Aprile Sawczuk (Bar No. 3320)
STEVENS & LEE, P.C.
1105 North Market Street, 7th Floor
Wilmington, Delaware 19801
Telephone:  (302) 654-5180
Facsimile:  (302) 654-5181
Email: masa@stevenslee.com

and

Constantine D. Pourakis (*pro hac vice*)
485 Madison Avenue, 20th Floor
New York, New York 10022
Telephone:  (212) 319-8500
Facsimile:  (212) 319-8505
Email: cp@stevenslee.com

and

Brian P. Miller
AKERMAN SENTERFITT
One Southeast Third Avenue, 25th Floor
Miami, FL  33131-1714
Telephone: (305) 374-5600
Facsimile:  (305) 374-5095

21